**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

Armored Group LLC,                    )    No. CV-24-01516-PHX-SPL
                                      )
                    Plaintiff,        )
                                      )    **ORDER**
vs.                                   )
                                      )
Monty Lutzker et al.,                 )
                                      )
                    Defendants.       )
                                      )
                                      )

        Before the Court is Plaintiff Armored Group, LLC's Motion for Preliminary Injunction. (Doc. 31). Also before the Court is Plaintiff's Notice of Supplemental Evidence (Doc. 70) and Defendants' Objection (Doc. 71). Having reviewed the parties' briefing for the Preliminary Injunction Motion (Docs. 34, 35, 67, 68), and having held an evidentiary hearing on January 23 and 24, 2025, the Court now rules as follows.

**I.    BACKGROUND**

        Plaintiff Armored Group, LLC ("Plaintiff" or "TAG") seeks injunctive relief for a variety of claims arising out of a dispute with former employees, Defendants Monty Lutzker, Beau Gailey, and Ryan Holden ("Defendants"). (Doc. 31 at 1). Plaintiff manufactures and supplies armored vehicles globally and previously partnered with a foreign independent contractor, The Armored Group Middle East FZC ("FZC"), that operates a manufacturing facility in the United Arab Emirates. (*Id*. at 5). FZC is not a party in this case.

        The Defendants' employment with TAG was terminated in late 2023 and early

2024. (*Id.* at 6). Subsequently, Defendants allegedly solicited and became business partners with FZC, who had recently undergone a change in ownership and management in March 2023. (*Id.* at 5–6). Defendants formed a limited-liability company, TAG Middle East U.S. Manufacturing, LLC, in Wyoming, in February 2024, and registered it as a foreign LLC in South Carolina in June 2024. (*Id.* at 6). They also appeared at a global industry conference on behalf of FZC in June 2024. (*Id.*). Additionally, Plaintiff alleges that FZC has rebranded itself as "TAG Dynamics," and Defendants have begun soliciting TAG's business relationships under the same name. (*Id.* at 4, 6). Plaintiff sent cease and desist letters to Defendants Lutzker and Gailey in March 2024 and Defendant Holden in June 2024. (*Id.* at 6). Notwithstanding these letters, Plaintiff alleges that Defendants have begun manufacturing armored cars like Plaintiff's; branding and reselling vehicles under Plaintiff's trademarks; soliciting TAG's customers, contractors, former employees; and using the moniker "TAG Dynamics" to engage in unlawful competitive activity. (*Id.* at 6–7). Plaintiff claims the solicitation of its customers, employees, and contractors violates Defendants' employment agreements with TAG. (*Id.* at 7–8). Moreover, Plaintiff claims that Defendants are liable under various common law torts and federal statutes. (*Id.* at 9–11).

Plaintiff filed this suit on June 21, 2024. (Doc. 1). Approximately six months later, on December 12, 2024, Plaintiff filed the present Motion for Preliminary Injunction. (Doc. 31). On January 23 and January 24, 2025, the Court held an evidentiary hearing on the Motion and ordered the parties to brief their closing arguments. (Docs. 55, 57).

## II.    LEGAL STANDARD

A party seeking injunctive relief must show that: (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm in the absence of injunctive relief; (3) the balance of equities tips in its favor; and (4) an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). "The Ninth Circuit weighs these factors on a sliding scale, such that where there are only 'serious questions going to the merits'— that is, less than a 'likelihood of success' on the merits—a preliminary injunction may still

issue so long as 'the balance of hardships tips *sharply* in the plaintiff's favor' and the other two factors are satisfied." *Short v. Brown*, 893 F.3d 671, 675 (9th Cir. 2018) (citing *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013)).

### III.   DISCUSSION

#### a.   Notice of Supplemental Evidence (Doc. 70) and Objection (Doc. 71)

On February 14, 2025, Plaintiff filed its Notice of Supplemental Evidence, in which it requested the Court consider a declaration from its Preliminary Injunction hearing witness Angelo Giordano. (Doc. 70). Plaintiff's Notice proposes that the evidence rebuts Defendant Lutzker's testimony that his company, G.O.A.T., is not an armored vehicle company and shows that (1) G.O.A.T.'s marketing used photographs that infringe upon TAG's BATT trademark and (2) G.O.A.T.'s advertising creates a false association between G.O.A.T. and TAG. (*Id.* at 1–2). On February 17, 2025, Defendants filed an Objection requesting the Court strike Plaintiff's notice for several reasons. (Doc. 71). Pursuant to LRCiv 7.2(m)(2), the Court will construe Defendants' filing as a Motion to Strike and will grant it for the following reasons.

Rule 12(f) provides the Court with authority to "strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "Although generally disfavored, a motion to strike may be granted where necessary to spare the parties the time and expense associated with 'litigating spurious issues.'" *Cheatham v. ADT Corp.*, 161 F. Supp. 3d 815, 833–34 (D. Ariz. 2016) (quoting *Sidney–Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983)).

Plaintiff's Notice seeks to introduce evidence that is irrelevant to this case and the Preliminary Injunction Motion. The Amended Complaint does not allege any claims based on Defendants' alleged infringement of Plaintiff's BATT trademark; even if it did, G.O.A.T. is not a defendant in this case, so its alleged infringing conduct is immaterial. Nor does the Amended Complaint seek to bring any false association claim based on customer confusion between G.O.A.T. and Plaintiff. Indeed, the Amended Complaint makes no mention of G.O.A.T., and the Preliminary Injunction Motion alleges that

G.O.A.T. is a customer of Plaintiff's that Defendants have unlawfully solicited or contracted with. (Doc. 31 at 7).

"When a plaintiff seeks injunctive relief based on claims not pled in the complaint, the court does not have the authority to issue an injunction." *Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*, 810 F.3d 631, 633 (9th Cir. 2015). Because Plaintiff's Notice seeks to provide evidence that speaks to issues and claims not pled in its Amended Complaint or pursued in its Motion for Preliminary Injunction, the Court finds that Plaintiff's Notice includes material that is "redundant, immaterial, [and] impertinent." Fed. R. Civ. P. 12(f). As such, the Court finds it appropriate to grant Defendants' Objection and strike Plaintiff's Notice.

### b. Likelihood of Success on the Merits

Plaintiff seeks injunctive relief on the basis of seven different claims: (1) false association; (2) false advertising; (3) unlawful competition; (4) tortious interference with business expectancy and contracts; (5) civil conspiracy; (6) defamation; and (7) breach of contract. (Doc. 31).

### i. False Association

Plaintiff first claims that Defendants are engaged in False Association and False Advertising in violation of § 43 of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A)–(B), in its use of the TAG name and logo. (Doc. 31 at 9).

Under the Lanham Act, a claim for false association has the following elements: (1) the defendant used a word, term, name, symbol, or device (or any combination thereof) or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact; (2) the usage was in commerce, in connection with goods or services; (3) the usage is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person; and (4) the plaintiff has been or is likely to be injured as a result of the usage. *Zekelman Indus. Inc. v. Marker*, No. CV-19-02109-PHX-DWL, 2020 WL 1495210,

at *7–8 (D. Ariz. Mar. 27, 2020) (citing 15 U.S.C. § 1125(a)(1)(A)). A plaintiff need not demonstrate it has a registered trademark in order to bring a claim for false association. *See EVIG, LLC v. Natures Nutra Co*., 685 F. Supp. 3d 991, 997 (D. Nev. 2023) ("A false association claim under subsection A, on the other hand, serves as the functional equivalent of a traditional trademark infringement claim for unregistered marks and trade dress.").

Plaintiff argues that Defendants' use of the names "TAG Dynamics" and "TAG Middle East US Manufacturing, LLC" and the use of TAG's castle logo, which was designed to resemble Plaintiff's CEO's home, gave a misleading impression that Defendants' work was sanctioned or partnered with TAG. (Doc. 31 at 5, 9). While the Motion alleges that non-party FZC is the entity using the branding TAG Dynamics, rather than Defendants (*Id.* at 6), Defendants' other conduct is likely sufficient to satisfy the first element. Defendants' use was for business and commerce purposes, which satisfies the second element.

"The 'core element' is the 'likelihood of confusion, i.e. whether the similarity of the marks is likely to confuse customers about the source of the products.'" *PetConnect Rescue, Inc. v. Salinas*, 656 F. Supp. 3d 1131, 1160–62 (S.D. Cal. 2023) (citing *Freecycle Network, Inc. v. Oey*, 505 F.3d 898, 902 (9th Cir. 2007)). "Likelihood of confusion exists when consumers are likely to assume that a product or service is associated with a source other than its actual source because of similarities between the two sources' marks or marketing techniques." *Acad. of Motion Picture Arts & Scis. v. Creative House Promotions, Inc*., 944 F.2d 1446, 1454 (9th Cir. 1991) (citation and quotations omitted).

Here, the alleged facts—that Defendants are using a name significantly similar to Plaintiff's, are producing an identical product, and causing customer confusion—weigh in favor of finding a likelihood of confusion among consumers. (Docs. 31 at 9; 31-3 at 3). In analogous cases, courts have found that "[t]he similarities between the parties' business names and the services they offer are likely to cause consumers to associate Plaintiff's services with those of Defendant, or to incorrectly attribute them to Defendant." *ICU Indus. Inc. v. Copper State Glass & Screen LLC*, No. CV-23-00298-TUC-AMM, 2024 WL

2892331, at *4 (D. Ariz. May 7, 2024), *report and recommendation adopted*, No. CV-23-00298-TUC-AMM, 2024 WL 2350138 (D. Ariz. May 23, 2024) (finding false association where defendant operated as "Copper State Glass and Screen" to provide same services as plaintiff's company, "Copperstate Glass & Mirror").

Plaintiff also provided evidence that a potential customer was confused by the branding and thought that TAG Dynamics was part of the same company as TAG. (Doc. 63 at 52). However, Plaintiff's Motion indicates that FZC, not Defendants' U.S. company, is utilizing the name "TAG Dynamics," and it is unclear how Defendants' as individuals could be liable under the Lanham Act for FZC's conduct and use of similar branding. (Doc. 31 at 6). Indeed, to that end, this case presents a unique conundrum considering that several companies—Plaintiff, other firms formed by Plaintiff's CEO, Plaintiff's former foreign business partner, TAG Middle East FZC—use and have used the TAG name and branding for several years in the same industry. (Doc. 63 at 25). Thus, while the Court is unpersuaded by Defendant Lutzker's testimony that Defendants have tried to distance themselves from TAG's reputation when they created a company with an extremely similar name (Doc. 65 at 48), the Court cannot conclude from the record that Defendants' use of the TAG name and branding increases the existing likelihood of confusion.

Lastly, with respect to the fourth element—injury or likelihood of injury due to the usage—Plaintiff primarily alleges injury to its business identity, reputation, and goodwill and alleges that customer confusion has resulted and will result in lost customers, revenues, and profits. (Docs. 21 at 12; 31 at 12; 31-1 at 5–6). Specifically, Plaintiff points to Defendants' appearance at a global industry conference under the confusing name (Doc. 31 at 6) and evidence that Defendants have solicited or entered agreements with six of Plaintiff's previous customers (Doc. 31-1 at 5–6). However, any usage at the global industry conference occurred outside of the United States, and the Supreme Court has held that claims under § 1125(a)(1) of the Lanham Act "are not extraterritorial and extend only to claims where the infringing use in commerce is domestic." *Abitron Austria GmbH v. Hetronic Int'l, Inc.*, 600 U.S. 412, 415 (2023). Additionally, Defendant Lutzker testified

under oath that Defendants have not entered or solicited agreements with Plaintiff's customers. (Doc. 65 at 43–46).

Due to the conflicting evidence regarding the likelihood or existence of injury and the likelihood of customer confusion, the Court is not convinced that Plaintiff has demonstrated a likelihood of success on the merits for its False Association claim. At most, Plaintiff has posed a question of success on the merits. However, the Court cannot conclude that injunctive relief is appropriate at this time without further information on the customer confusion and injury elements, especially considering Plaintiff's failure to show an immediate, irreparable harm, as discussed below.

### ii. False Advertising

Plaintiff's False Advertising claim under 5 U.S.C. § 1125(a)(1)(B) largely mimics its False Association claim. However, "[t]he Supreme Court and the Ninth Circuit have both drawn sharp distinctions between claims brought under § 1125(a)(1)(A) and § 1125(a)(1)(B)." *EVIG, LLC*, 685 F. Supp. 3d at 996. While the focus of false association claims is whether the trade dress "causes confusion by leading consumers to think that two products from different sources actually come from the same source," false advertising claims focus on "whether a defendant has made some false statement in advertising about the product that fundamentally misrepresents its qualities." *Id.* at 996–97. Other district courts within the Ninth Circuit have rejected false advertising claims in cases like this one, where the thrust of the plaintiff's allegations is that "because defendant has allegedly copied plaintiff's trade dress, it is falsely advertising its products as plaintiff's and causing consumer confusion." *Id.* at 997.

Here, the alleged misrepresentations are (1) a comment to a vendor that Defendants were the "real TAG" and were rebranding the company, made at an industry conference in Paris, France, and (2) another statement to an unidentified vendor that "TAG Dynamics was a joint venture with TAG." (Doc. 31 at 9). As these allegations mainly target Defendants' alleged misrepresentations about their association with Plaintiff, the allegations are much more akin to a false association claim, rather than a traditional false

advertising claim. Even assuming Plaintiff is alleging a claim distinguishable from its false association claim, the Court finds that Plaintiff has not demonstrated a likelihood of success on the merits as to its false advertising claim.

First, as noted above, any comments made outside of the United States are not actionable under § 1125(a)(1) of the Lanham Act. *Abitron*, 600 U.S. at 415. Thus, Plaintiff does not have a likelihood of success on the merits with respect to claims made at the industry conference in France.

With respect to the other alleged misrepresentation that TAG Dynamics was a joint venture with Plaintiff, Plaintiff has not alleged facts to satisfy the elements of a false advertising claim. To state a claim for false advertising under Section 43(a) of the Lanham Act, Plaintiff must show that (1) Defendants made a false statement of fact in a commercial advertisement; (2) the statement deceived or had the tendency to deceive a substantial segment of its audience; (3) the deception was material, in that it was likely to influence the purchasing decision; (4) the false statement entered interstate commerce; and (5) Plaintiff has been or is likely to be injured as a result of the false statement. *Enigma Software Grp. USA, LLC v. Malwarebytes, Inc.*, 69 F.4th 665, 671 (9th Cir. 2023).

Under the first element the alleged misrepresentation must occur "in commercial advertising or promotion." 5 U.S.C. § 1125(a)(1)(B). The Ninth Circuit is clear that not all commercial speech is "promotional" as to be actionable under the Lanham Act. *Prager Univ. v. Google LLC*, 951 F.3d 991, 1000 (9th Cir. 2020). The alleged facts are severely lacking as to the context of the statement, and as such, the Court is unable to determine from the FAC or the present Motion whether the statement constituted commercial advertising or promotion.

Additionally, the statement must "misrepresent[] the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities." *Id.* Here, the alleged misrepresentation that "TAG Dynamics was a joint venture with TAG" (Doc. 31 at 9) is at most a statement causing confusion as to the origin of TAG Dynamic's goods, services, or commercial activities rather than their nature,

characteristics, qualities, or geographic origin. Nor did Plaintiff demonstrate how it has been or is likely to be injured as a result of the statement to the unidentified vendor beyond the conclusory assertion that it "caus[ed] damage." (Doc. 31 at 9). In sum, Plaintiff has not established a likelihood of success on the merits for its false advertising claim.

### iii.  Unlawful Competition

Plaintiff also seeks injunctive relief for its common law unfair competition claim. (Doc. 31 at 10). This claim encompasses Defendants' alleged conduct included in Plaintiff's other claims, such as false association and advertising; making false and misleading statements and disparaging remarks; and manufacturing armored trucks in violation of the employment agreements. (*Id.*).

The Arizona Supreme Court has declined to decide whether Arizona common law recognizes a claim for unfair competition. *Orca Commc'ns Unlimited, LLC v. Noder*, 337 P.3d 545, 549 (Ariz. 2014). However, in previously assessing unfair competition claims, Arizona courts have stated that the unfair competition doctrine "encompasses several tort theories, such as trademark infringement, false advertising, 'palming off,' and misappropriation." *Fairway Constructors, Inc. v. Ahern*, 970 P.2d 954, 956 (Ariz. Ct. App. 1998). Courts applying Arizona law have declined to extend this interpretation to include theories of fraud, trespass, or conversion. *Joshua David Mellberg LLC v. Will*, 96 F. Supp. 3d 953, 963 (D. Ariz. 2015). Courts have also found that "an unfair competition claim is preempted unless it alleges elements that make it qualitatively different" from statutory claims or other torts. *See Fairway Constructors, Inc.,* 970 P.2d at 956 (Ariz. Ct. App. 1998) ("We agree that an unfair competition claim is preempted unless it alleges elements that make it qualitatively different from a copyright infringement claim."); *Joshua David Mellberg LLC,* 96 F. Supp. 3d at 963 (allowing plaintiff "amend the claim of unfair competition based on misappropriation of confidential information that is not a trade secret.").

Although this issue is not clearly settled under Arizona law, Plaintiff likely cannot bring a common law unfair competition claim based on Defendants' alleged conduct of

"engaging in financial misconduct," "withholding key information about the company," manufacturing and selling armored trucks, or "making disparaging remarks about the company." (Doc. 21 at 14; Doc. 31 at 10). Those claims are not contemplated under other unfair competition rulings, which have generally only found conduct in the realm of misappropriation to be actionable. *See generally Joshua David Mellberg LLC*, 96 F. Supp. 3d 953; *Fairway Constructors, Inc.*, 970 P.2d 954. Additionally, Plaintiff's unfair competition claim is likely preempted to the extent it relies on Defendants' alleged false association and false advertising, as Plaintiff provides no explanation for how this claim differs from its Lanham Act claims. Indeed, Plaintiff appears to group its unfair competition claim with its Lanham Act claims. (*See* Doc. 67 at 4 ("The same evidence [supporting its Lanham Act claims] demonstrates TAG is likely to prevail on its common law unfair competition claim.")).

Thus, that leaves Plaintiff's allegation that Defendants are "engaging in palming off or passing off by making false representations tending to induce buyers to believe the misleading impression that Defendants' work with TAG Dynamics is affiliated with or sanctioned by TAG[.]" (Doc. 31 at 10). "Palming off" or "passing off" exists when a defendant makes a false representation that tends "to induce buyers to believe that the defendant's product is that of the plaintiff." *Fairway Constructors, Inc.*, 970 P.2d at 956 (citations and quotations omitted). Plaintiff's allegation that Defendants stated "to at least one vendor that TAG Dynamics was a joint venture with TAG" could potentially qualify as passing off, as that statement likely goes beyond the protection offered by Plaintiff's trademark rights. (Doc. 31 at 10). However, the Supreme Court and Ninth Circuit have recognized that § 1125(a) of the Lanham Act applies to conduct that constitutes "passing off" and "reverse passing off." *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 32 (2003); *Lamothe v. Atl. Recording Corp.*, 847 F.2d 1403, 1406 (9th Cir. 1988). Thus, without evidence that Plaintiff's "palming off" allegation is qualitatively different from its false association claim, Plaintiff's unfair competition claim is preempted to the extent it relies on such conduct. As such, Plaintiff fails to tip the scales toward a likelihood

of success on the merits such to warrant the extraordinary remedy of injunctive relief.

### iv.  Tortious Interference with Business Expectancy and Contracts

Plaintiff argues that Defendants are tortiously interfering with its business expectancy and contracts by making false and misleading statements and disparaging comments about TAG to a variety of Plaintiff's former, current, and prospective clients, vendors, and employees. (Doc. 31 at 10). Specifically, Plaintiff alleges that Defendants interfered with TAG's business relationships by asserting that TAG Dynamics was a joint venture with TAG and have begun to assist and engage TAG's competitors at trade shows. (*Id*.). Plaintiff also alleges that Defendants leaked information to the German press which "disrupted TAG's business relationship and called a contract into question such that the German government investigated and caused the Company to lose profits and suffer damages." (*Id*. at 10–11).

The elements of a tortious interference claim in Arizona are "(1) a valid contract or business expectancy existed; (2) the interferer had knowledge of such business contracts or expectancy; (3) there was intentional interference causing a breach of the contract or business expectancy; and (4) resultant damages." *USI Ins. Servs. LLC v. Alliant Ins. Servs. Inc*., No. CV-23-00192-PHX-SMB, 2023 WL 3792749, at *9 (D. Ariz. June 2, 2023). Moreover, Arizona courts have held that "an action for tortious interference with a business relationship requires a business relationship evidenced by an actual and identifiable understanding or agreement which *in all probability* would have been completed if the defendant had not interfered." *Vazirani v. Annexus Distribs. AZ, LLC*, No. 1 CA-CV 14-0815, 2017 WL 443529, at *11 (Ariz. Ct. App. Feb. 2, 2017) (citing *Dube v. Likins*, 167 P.3d 93, 101 (Ariz. Ct. App. 2007).

Here, Plaintiff has not established the requisite elements for its tortious interference claims. Plaintiff first alleges that it had a business expectancy with a company that TAG was interested in purchasing, that Defendant Lutzker knew of TAG's interest, and that Lutzker intentionally and improperly usurped the opportunity for himself by purchasing the company. (Doc. 21 at 15). Plaintiff provided evidence, via its cross-examination of

Defendant Monty Lutzker, that Monty Lutzker took a business opportunity that was initially presented to Plaintiff's CEO, Robert Pazderka. (Doc. 65 at 87–95). However, from the face of the First Amended Complaint, the present Motion, and evidence at the Preliminary Injunction hearing, Plaintiff does not clearly demonstrate that Plaintiff's interest in purchasing the company would have in all probability been completed if Defendants had not interfered. Indeed, Defendant Lutzker's testimony at the January 24, 2025 Preliminary Injunction Hearing indicates that the opportunity (1) was not offered to TAG because the company was uninterested in doing business with Mr. Pazderka; and (2) that Mr. Pazderka was uninterested in the terms of the opportunity. (*Id.* at 87–95).

Likewise, Plaintiff argues that Defendant "disrupted" its business expectancy in receiving a line of credit from Commercial Bank by "making disparaging remarks . . . including advocating that the line of credit not be given." (*Id.*). But Plaintiff's witness, Robert Pazderka, testified at the January 23, 2025 Hearing that Plaintiff received the line of credit, albeit three to four months after initially planned. (Doc. 63 at 77). The Court cannot conclude that the business expectancy was not completed in the face of direct contrary evidence, and it is unclear what Plaintiff's resultant damages were.

Similarly, Plaintiff alleges that Defendants again disrupted TAG's vendor and customer relationships through its misleading and false statements about their relationship with TAG, but it is unclear from this conclusory allegation if and how Plaintiff's business expectancies were prevented. (Doc. 21 at 15). Lastly, Plaintiff alleges that it has a contract with an unidentified third party; Defendants "knew of the relationship and contract" and "leaked false information to the German media to cause the third party to cancel the contract." (*Id.* at 16). While Plaintiff alleges that the leak "disrupted the business relationship" and "actively impaired, impeded, and damaged Plaintiff's contractual relationship," Plaintiff does not allege the contract was breached nor specify resultant damages. (*Id.*). As such, Plaintiff has not demonstrated a clear likelihood of success on the merits for its tortious interference claims.

///

### v.  Civil Conspiracy

Plaintiff seeks an injunction based on its claim that Defendants are engaged in an ongoing civil conspiracy to provide an unfair competitive advantage to Defendants' rival business interest, TAG Dynamics. (Doc. 31 at 11). Plaintiff argues that the conspiracy is evidenced by Defendants' unlawful conduct, including making false, misleading, and disparaging statements to Plaintiff's various business relationships and soliciting those relationships in violation of Defendant Gailey and Holden's employment contracts. (*Id.*).

"Under Arizona law, a claim of civil conspiracy must be based on an underlying tort[.]" *Cervantes v. Countrywide Home Loans, Inc*., 656 F.3d 1034, 1041 (9th Cir. 2011). Plaintiff does not specify what underlying torts form the base of its conspiracy claim. Nor has Plaintiff shown a likelihood of success on the merits for any of the alleged torts included in its FAC. Thus, Plaintiff has failed to demonstrate a likelihood of success on the merits for this claim.

### vi.  Defamation

Plaintiff moves to enjoin Defendants' "slander" to its customers and vendors. (Doc. 31 at 11). Plaintiff alleges that the defamatory statements include "that TAG Dynamics was a joint venture with TAG" and various indications that TAG Dynamics was the real company, claims that Defendants were rebranding the company, and that "the TAG Dynamics UAE operation was the 'main operation' while TAG is merely a broker and has no manufacturing capability." (*Id.*).

Under Arizona common law, a defamatory statement "must be false and must bring the defamed person into disrepute, contempt, or ridicule, or must impeach [that person]'s honesty, integrity, virtue, or reputation." *Sign Here Petitions LLC v. Chavez*, 402 P.3d 457, 462 (Ariz. Ct. App. 2017). In assessing defamation claims, courts first consider "whether, under all the circumstances, a statement is capable of bearing a defamatory meaning." *Id.* at 463 (citing *Yetman v. English*, 811 P.2d 323, 331 (Ariz. 1991)). This step considers whether the statement can be reasonably understood to state or imply an objective fact. *Id.* Courts must consider whether the general tenor and impression created by the statement

could be considered defamatory by a reasonable listener, as well. *Id.* Next, the court must determine whether the statement's allegedly defamatory meaning was, in fact, conveyed. *Id.* at 464.

Arizona courts have emphasized the importance of thorough factual allegations in defamation actions, "because the context and language of an allegedly defamatory statement is crucial to the court's analysis." *BLK III, LLC v. Skelton*, 506 P.3d 812, 817 (Ariz. Ct. App. 2022), *as amended* (Feb. 17, 2022) (citation omitted). "That is, without knowing the precise language of the statement allegedly uttered, the court cannot analyze whether the statement is objectively verifiable as true or false—a critical question in determining whether a defamation action may lie." *Id.* (citations omitted). Instead, a "plaintiff must clearly and specifically allege the content and context of the challenged statements and why and how they were defamatory." *Id.* at 817–18.

Here, Plaintiff's Motion and FAC do not sufficiently detail the precise language, content, and context of allegedly defamatory statement, and Plaintiff does not specify how and why the statements are defamatory. Indeed, it is unclear, and Plaintiff does not offer arguments, whether some of the alleged statements even assert objective facts as opposed to general commercial puffing. *See generally Sign Here Petitions LLC*, 402 P.3d at 464. Nor does Plaintiff allege how the statements damaged Plaintiff's reputation, honesty, or integrity, or brought Plaintiff into disrepute, contempt, or ridicule. Instead, Plaintiff merely argues that the false statements "caus[ed] damage" to TAG. (Doc. 31 at 11). Without more information, Plaintiff has not demonstrated a likelihood of success on the merits.

### vii.  Breach of Contract

Plaintiff alleges that Defendants Holden and Gailey have breached their employment contracts' confidentiality, non-compete, and non-solicitation provisions and seeks to enjoin such behavior. (Doc. 31 at 11–12). Defendants argue that the restrictive covenants cannot be enforced because Plaintiff materially breached the same agreements by failing to pay Defendants their rightly earned commissions when they were working for Plaintiff. (Doc. 34 at 8). Alternatively, Defendants argue that Plaintiff did not establish that

Defendants solicited any of Plaintiff's customers and that any intellectual property shared was not confidential. (*Id.* at 9).

Under Arizona law,

> [a] restrictive covenant is reasonable and enforceable when it protects some legitimate interest of the employer beyond the mere interest in protecting itself from competition such as preventing competitive use, for a time, of information or relationships which pertain peculiarly to the employer and which the employee acquired in the course of the employment.

*Bed Mart, Inc. v. Kelley*, 45 P.3d 1219, 1221 (Ariz. Ct. App. 2002) (cleaned up). Generally, non-compete and non-solicitation restrictions are enforceable if they are reasonable with respect to duration, geographic scope, and the range of activities affected. *Traditions Health LLC v. Paulson*, No. CV-23-01876-PHX-SMB, 2023 WL 6318015, at *3 (D. Ariz. Sept. 28, 2023) (citations omitted).

Plaintiff attached the relevant agreements to its FAC. (*See* Docs. 21-1; 21-2). The agreements provide post-employment restrictions on soliciting employees or contractors engaged by TAG; soliciting client, customers, or subcontractors or inducing or encouraging any of TAG's business relations to cease doing business with TAG; and "work[ing] on, plan[ning], prepar[ing] for, organiz[ing] or engag[ing]" in any business activities in the Restricted Field within the Business Territory. (Doc. 21-1 at 9). The relevant Business Territory, as defined by the non-competition agreement, "means the entire United States, Africa, Middle East, Central America, and South America." (*Id.* at 6). The "Restricted Field" provision limits activities within the business of selling and marketing armored vehicles. (*Id.* at 7). The non-competition restriction and client and employee non-solicitation agreements have a 12-month limit for Defendant Holden and a 24-month limit for Defendant Gailey. (*Id.* at 6–7; Doc. 21-2). The agreement also contains prohibitions on the unauthorized disclosure or use of confidential company information. (Doc. 21-1 at 8).

The Court is unconvinced that the non-competition and non-solicitation restrictive covenants are enforceable, as their scope is unreasonable. The geographic scope is extremely broad, encompassing several continents and the entire United States. "This

Court, applying Arizona law, has not favored restrictive employment provisions with unlimited geographical reach." *Karp v. Avella of Deer Valley Inc*., No. CV13-1885 PHX DGC, 2013 WL 5435212, at *1 (D. Ariz. Sept. 30, 2013) (collecting cases); *see also Olliver/Pilcher Ins., Inc. v. Daniels*, 715 P.2d 1218, 1220 (Ariz. 1986) (finding statewide scope to be overbroad). Worldwide geographic scopes have been found reasonable where the business is conducted internationally and where the restriction is limited in scope in other respects. *See Cont'l Promotion Grp., Inc. v. Garvin*, No. CV 08-0070-PHX-SRB, 2009 WL 10673482, at *5 (D. Ariz. May 22, 2009). At the Preliminary Injunction Hearing, Plaintiff argued that because it conducts business globally, the geographic scope is reasonable and necessary to protect Plaintiff's legitimate business interests. (Doc. 63 at 11). However, Plaintiff's witness Robert Pazderka testified that Plaintiff has not—or at least could not show that is has—conducted business in several of the prohibited regions for several years, including the entirety of Defendants' tenure with TAG. (Doc. 63 at 117–23). Under Arizona law, courts are hesitant to find that a company has a legitimate protectable interest in areas that they never worked. *See Elec. Payment Providers, Inc. v. Kennedy*, No. 1 CA-CV 20-0382, 2021 WL 6087642, at *4 (Ariz. Ct. App. Dec. 23, 2021) ("[Plaintiff] has provided no controlling legal authority demonstrating they have a protectable interest in denying defendants the right to compete in geographic areas in which they never provided service while working for [Plaintiff]. To be sure, Arizona law is contrary.").

To that end, the prohibition on contacting any of TAG's business relations is likely unenforceable, as Arizona courts typically restrict solicitation only of "individuals with whom the Defendants have formed a meaningful relationship." *Nouveau Riche Corp. v. Tree*, No. CV08-1627-PHX-JAT, 2008 WL 5381513, at *5 (D. Ariz. Dec. 23, 2008); *Karp*, 2013 WL 5435212, at *1.

Additionally, the restriction on any activities related to the business of selling and marketing armored vehicles may be overbroad, as well. Typically, courts favor activity restraints that are "limited to the particular specialty of the present employment." *Compare*

16

*Valley Med. Specialists v. Farber*, 982 P.2d 1277, 1285 (Ariz. 1999) (rejecting non-compete prohibition on doctor's practice of all medicine rather than only his specialty), *with Bed Mart, Inc. v. Kelley*, 45 P.3d 1219, 1223 (Ariz. Ct. App. 2002) (accepting prohibition on subsequent employment at mattress stores specifically, because plaintiff could still obtain employment in his specific area of sales expertise—mattresses—at other furniture and department stores).

Lastly, the length of the restrictions is likely overbroad. Generally, restrictive covenants are found reasonable if they are only as long as necessary to replace the employee and train a replacement or give the replacement a chance to demonstrate his effectiveness to do the job. *Amex Distrib. Co. v. Mascari*, 724 P.2d 596, 604 (Ariz. Ct. App. 1986). Restrictive covenants may also be found reasonable if the duration lasts as long as necessary to render confidential information obsolete. *See generally Bed Mart*, 45 P.3d at 1223. At the Preliminary Injunction Hearing, Plaintiff argued that the length of Defendant Gailey and Holden's restrictive covenants is reasonable relative to their respective levels of responsibility. (Doc. 63 at 12). Plaintiff further argued in its supplemental closing briefing that the duration of the covenants is reasonable in light of the lengthy sales cycle—up to 10 years—in the industry. (Doc. 67 at 5). But Plaintiff has not alleged facts on the record demonstrating how those durations are justified relative to training replacements, rendering confidential information obsolete, or its other legitimate business interests beyond providing conclusory assertions.

While Arizona courts allow for severance of unenforceable provisions, courts cannot add terms or rewrite provisions. *Karp*, 2013 WL 5435212, at *2. At this stage, especially in light of Plaintiff's failure to satisfy the irreparable harm factor under *Winter* as discussed below, the Court declines to undertake an analysis of whether or what portions of the restrictive covenant could be severed to make the restrictions enforceable. Thus, Plaintiff has not established a likelihood of success on the merits for its breach of contract claims regarding the non-solicitation and non-competition provisions.

With respect to the confidentiality provision, Plaintiff has not clearly alleged that

Defendants Holden and Gailey are in breach of contract. Plaintiff's Motion for Preliminary Injunction does not argue that Defendants have shared confidential information. (Doc. 31 at 11–12). In the Motion's attached Declaration of Robert Pazderka, Mr. Pazderka claims that Defendant Holden distributed a TAG Dynamics brochure that "contains large quantities of information derived directly from TAG's confidential and proprietary business information." (Doc. 31-1 at 3). Plaintiff's FAC alleges that Defendants have breached the confidentiality provisions "by using and disclosing Plaintiff's proprietary, confidential and trade secret information to compete against Plaintiff" but does not provide facts beyond these conclusory allegations. (Doc. 21 at 21–22). Moreover, Plaintiff does not allege specific confidential information used by Defendant Holden; Plaintiff's Motion may—although it is far from clear—indicate that the TAG Dynamics promotional brochure is derived from the TAG promotional brochure. (Doc. 31-1 at 3). Additionally, Defendants provided sworn testimony at the January 24, 2025 Hearing that they never took confidential information from Plaintiff and that the majority, if not all, of the work they did for Plaintiff involved public bids and tenders, rather than private deals. (Docs. 65 at 47; 66 at 88). Plaintiff further fails to explain how promotional materials—which are shared with third parties and which Plaintiff published on public record in this lawsuit—or public tenders to governments would qualify as confidential under the employment agreements.

All told, Plaintiff has not demonstrated a likelihood of success on the merits for its breach of contract claims, as it is not apparent from the record that the restrictive covenants are enforceable or that confidential information was misappropriated.

### c.  Irreparable Harm

Even if Plaintiff had demonstrated a likelihood of success on the merits for any of its claims, preliminary injunctive relief is inappropriate, as Plaintiff did not demonstrate that it faces immediate irreparable harm.

"To show irreparable harm, '[a] plaintiff must do more than merely allege imminent harm sufficient to establish standing; a plaintiff must *demonstrate* immediate threatened injury as a prerequisite to preliminary injunctive relief.'" *Forefront Dermatology S.C. v.*

*Crossman*, 642 F. Supp. 3d 947, 949 (D. Ariz. 2022) (alteration in original) (quoting *Caribbean Marine Servs. Co., Inc. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988).

The Ninth Circuit has held that delay in seeking a preliminary injunction is a factor to consider in evaluating irreparable injury. *Arc of Cal. v. Douglas*, 757 F.3d 975, 990 (9th Cir. 2014). A plaintiff's "long delay before seeking a preliminary injunction implies a lack of urgency and irreparable harm." *Oakland Trib., Inc. v. Chron. Pub. Co*., 762 F.2d 1374, 1377 (9th Cir. 1985). However, the Ninth Circuit has held that delay alone is not dispositive "in the context of ongoing, worsening injuries." *Douglas*, 757 F.3d at 990.

Plaintiff filed the present Motion six months after filing this case. (Doc. 31). With respect to Plaintiff's false association claim—which Plaintiff at most posed a question to the merits on—such a delay, without justification, forecloses preliminary injunctive relief. Other district courts in the Ninth Circuit have found similar delays to preclude injunctive relief in trademark infringement cases. *See Playboy Enterprises, Inc. v. Netscape Commc'ns Corp*., 55 F. Supp. 2d 1070, 1090 (C.D. Cal.), *aff'd*, 202 F.3d 278 (9th Cir. 1999) (five month delay); *Kolay v. Milliken*, No. 218CV00640SVWKSX, 2018 WL 1942709, at *4 (C.D. Cal. Mar. 22, 2018) (nine month delay); *ADIR INTERNATIONAL, LLC, v. UNICOMER S.A. de C.V., et al*., No. CV 07-01314 MMM (CTX), 2007 WL 10094750, at *23 (C.D. Cal. Nov. 19, 2007) (seven month delay unreasonable where plaintiff made no attempts to settle or prevent infringing conduct); *Contender Partners, LLC v. Azteca Int'l Corp*., No. CV0802026MMMJTLX, 2008 WL 11334492, at *24 (C.D. Cal. May 19, 2008) (three month delay); *Hanginout, Inc. v. Google, Inc*., 54 F. Supp. 3d 1109, 1132 (S.D. Cal. 2014) (seven month delay after filing suit weighs against irreparable harm).

Plaintiff argues that it has been "investigating and compiling evidence, and it filed its motion immediately following the email exchange wherein Defendant Holden solicited a potential customer using TAG's promotional materials." (Doc. 35 at 9). However, this argument fails to provide an explanation for the delay in seeking to enjoin Defendants' use of Plaintiff's trademarks or other allegedly unlawful conduct. Plaintiff knew of

Defendants' use of the TAG name and branding at the time of filing its initial Complaint (Doc. 1 at 2), and Plaintiff does not allege that it is suffering a new harm or significantly worsening injury arising from Defendants' use of Plaintiff's trademarks. *See Oakland Trib., Inc.*, 762 F.2d at 1377 ("Where no new harm is imminent, and where no compelling reason is apparent, the district court was not required to issue a preliminary injunction against a practice which has continued unchallenged for several years."). All told, the bar to receive a preliminary injunction is a high one, and the Court finds that Plaintiff has failed to establish a likelihood of immediate, irreparable harm.

### IV. CONCLUSION

As the Ninth Circuit has "noted that a showing of likelihood of irreparable injury is an absolute requirement," Plaintiff's failure to demonstrate good cause for its delay dooms its request to enjoin Defendants' use of the TAG name and branding. *Kolay*, 2018 WL 1942709, at *4 (citing *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011)). To that end, because Plaintiff has failed to demonstrate a likelihood of success or immediate, irreparable injury on any of its claims, the Court need not address the other *Winter* factors. *See id.*; *Fraihat v. U.S. Immigr. & Customs Enf't*, 16 F.4th 613, 651 (9th Cir. 2021) ("And because plaintiffs have not demonstrated a likelihood of success on any claim, we need not address the other preliminary injunction factors that plaintiffs also would have needed to establish."). Having carefully considered all of the evidence and the arguments of the parties, and having individually considered the *Winter* factors with respect to all of Plaintiff's claims for injunctive relief, the Court finds that Plaintiff is not entitled to a preliminary injunction.

Accordingly,

**IT IS ORDERED** that Plaintiff Armored Group LLC's Motion for Preliminary Injunction (Doc. 31) is **denied**.

**IT IS ORDERED** that Defendants Monty Lutzker, Beau Gailey, and Ryan Holden's Objection to Plaintiff's Notice of Supplemental Evidence (Doc. 71) is **granted**.

**IT IS FURTHER ORDERED** that the Clerk of Court shall **strike** Plaintiff

Armored Group LLC's Notice of Supplemental Evidence (Doc. 70).

     Dated this 18th day of February, 2025.

_____
Honorable Steven P. Logan
United States District Judge