**WO**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

Armored Group LLC,

Plaintiff,

vs.

Monty Lutzker, et al.,

Defendants.

No. CV-24-01516-PHX-SPL

**ORDER**

Before the Court is Defendants' Motion to Dismiss (Doc. 27) and Request for Judicial Notice in Support of their Motion to Dismiss (Doc. 28), Plaintiff's Response (Doc. 29), and Defendants' Reply (Doc. 30). For the following reasons, the Court now rules as follows.

## I. BACKGROUND

Plaintiff The Armored Group, LLC ("Plaintiff" or "TAG") brings a variety of claims arising out of a dispute with former employees, Defendants Monty Lutzker, Beau Gailey, and Ryan Holden ("Defendants"). (Doc. 21). Plaintiff manufactures and supplies armored vehicles globally. (*Id.* at 3).

Defendant Lutzker's employment with TAG was terminated in December 2023. (*Id.* at 5). The Amended Complaint does not allege when Defendants Holden or Gailey's employment ended, but the Court infers that they also left the company around this time. The Complaint alleges that after Defendants' employment ended, they began using a company named "TAG Dynamics" to engage in competitive conduct. (*Id.* at 2). They also

allegedly appeared at a global industry conference in France with one of TAG's competitors in June 2024. (*Id*. at 2, 6). Plaintiff sent cease and desist letters to Defendants Lutzker and Gailey in March 2024 and Defendant Holden in June 2024. (*Id.* at 6, 8, 10). Notwithstanding these letters, Plaintiff alleges that Defendants have begun soliciting TAG's customers, contractors, former employees and using the moniker "TAG Dynamics" to engage unlawful competitive activity. (*Id*. at 2). Plaintiff claims the solicitation of its customers, employees, and contractors violates Defendants' employment agreements with TAG. (*Id.*). Moreover, Plaintiff claims that Defendants are liable under various common law torts and federal statutes. (*Id*.).

Plaintiff filed this suit on June 21, 2024, and filed the operative Amended Complaint ("FAC") on August 30, 2024. (Doc. 1). Defendants subsequently filed their Motion to Dismiss. (Doc. 27). Prior to the Court's resolution of the present Motion, Plaintiff filed a Motion for Preliminary Injunction. (Doc. 31). After holding an evidentiary hearing on January 23 and January 24, 2025, and considering the parties' briefing, the Court denied Plaintiff's Motion for Preliminary Injunction. (Doc. 72). The Court now turns its attention to Defendant's Motion to Dismiss.

## II. LEGAL STANDARD

"To survive a Rule 12(b)(6) motion for failure to state a claim, a complaint must meet the requirements of Rule 8." *Jones v. Mohave Cnty.*, No. CV 11-8093-PCT-JAT, 2012 WL 79882, at *1 (D. Ariz. Jan. 11, 2012); *see also Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd*., 818 F.3d 193, 203 (5th Cir. 2016) (Rule 12(b)(6) provides "the one and only method for testing" whether pleading standards set by Rule 8 and 9 have been met); *Hefferman v. Bass*, 467 F.3d 596, 599–600 (7th Cir. 2006) (Rule 12(b)(6) "does not stand alone," but implicates Rules 8 and 9). Rule 8(a)(2) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A court may dismiss a complaint for failure to state a claim under Rule 12(b)(6) for two reasons: (1) lack of a cognizable legal theory, or (2) insufficient facts alleged under a cognizable legal theory. *In re Sorrento Therapeutics,*

*Inc. Secs. Litig.*, 97 F.4th 634, 641 (9th Cir. 2024) (citation omitted). A claim is facially plausible when it contains "factual content that allows the court to draw the reasonable inference" that the moving party is liable. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Factual allegations in the complaint should be assumed true, and a court should then "determine whether they plausibly give rise to an entitlement to relief." *Id*. at 679. Facts should be viewed "in the light most favorable to the non-moving party." *Faulkner v. ADT Sec. Servs., Inc.*, 706 F.3d 1017, 1019 (9th Cir. 2013). "Nonetheless, the Court does not have to accept as true a legal conclusion couched as a factual allegation." *Jones*, 2012 WL 79882, at *1 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

## III. DISCUSSION

### a. Judicial Notice

A court may take judicial notice of adjudicative facts only if they are "not subject to reasonable dispute." Fed. R. Evid. 201(b). The Ninth Circuit has held that "[c]ourts may take judicial notice of some public records, including the 'records and reports of administrative bodies.'" *United States v. Ritchie*, 342 F.3d 903, 909 (9th Cir. 2003) (citing *Interstate Nat. Gas Co. v. S. Cal. Gas Co.*, 209 F.2d 380, 385 (9th Cir. 1953)). However, courts may not take judicial notice of facts that are in dispute or subject to varying interpretations. *See generally Sanz v. City of Vallejo*, 2:19-CV-02134-TLN-DB, 2021 WL 2682162, at *3 (E.D. Cal. June 30, 2021).

Defendants request the Court take judicial notice of various publicly-available records from the U.S. Patent and Trademark Office, Arizona Corporation Commission, Delaware Division of Corporations, World Intellectual Property Organization, a United Arab Emirates business license website, and screenshots of a non-party corporation and competitor of Plaintiff's website. (Doc. 28 at 2). Because the Court finds the Motion to Dismiss resolvable without consideration of the proposed extraneous information, the Court declines to grant Defendants' request for judicial notice at this time.

### b. Count I: False Association

Under the Lanham Act, a claim for false association has the following elements: (1)

the defendant used a word, term, name, symbol, or device (or any combination thereof) or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact; (2) the usage was in commerce, in connection with goods or services; (3) the usage is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person; and (4) the plaintiff has been or is likely to be injured as a result of the usage. *Zekelman Indus. Inc. v. Marker*, No. CV-19-02109-PHX-DWL, 2020 WL 1495210, at *7–8 (D. Ariz. Mar. 27, 2020) (citing 15 U.S.C. § 1125(a)(1)(A)). A plaintiff need not demonstrate it has a registered trademark in order to bring a claim for false association. *See EVIG, LLC v. Natures Nutra Co*., 685 F. Supp. 3d 991, 997 (D. Nev. 2023) ("A false association claim under subsection A, on the other hand, serves as the functional equivalent of a traditional trademark infringement claim for unregistered marks and trade dress.").

The FAC alleges that Defendants are using the name "TAG Dynamics" and represented to one vendor that TAG Dynamics is a joint venture with Plaintiff. (Doc. 21 at 11). This allegation sufficiently satisfies the first element.

Less clear from the face of the Amended Complaint is whether Plaintiff has alleged facts sufficient to meet the second element: Plaintiff says that TAG Dynamics is a "rival business" elsewhere in the Complaint (*Id.* at 14) but fails to explain how the name TAG Dynamics has been used in commerce in connection with goods and services. To the extent Plaintiff purports that use of TAG Dynamics at Eurosatory 2024 constitutes false association, the FAC fails to satisfy the second element. Any usage at the global industry conference occurred outside of the United States, and the Supreme Court has held that claims under § 1125(a)(1) of the Lanham Act "are not extraterritorial and extend only to claims where the infringing use in commerce is domestic." *Abitron Austria GmbH v. Hetronic Int'l, Inc.*, 600 U.S. 412, 415 (2023).

Moreover, the FAC fails to demonstrate facts that the usage is likely to cause or has caused confusion. While it asserts that "Plaintiff has been irreparably injured, including

injury to its goodwill and reputation, which has resulted in lost revenues and profits and further diminished goodwill," it fails to set forth any facts to support that conclusion. (Doc. 21 at 12). Thus, the third and fourth elements of a false association claim are not satisfied, either.

All told, the Court cannot draw a reasonable inference that Defendants are liable for false association under the Lanham Act based on the allegations included in the Amended Complaint. The claim must be dismissed. However, as the addition of supplemental facts may cure the deficiencies identified in this Order, Plaintiff will be allowed leave to amend.

**c. Count II: False Advertising**

Plaintiff's false advertising claim is a nearly verbatim copy of its false association claim. (Doc. 21 at 12–13). "The Supreme Court and the Ninth Circuit have both drawn sharp distinctions between claims brought under § 1125(a)(1)(A) and § 1125(a)(1)(B)." *EVIG, LLC*, 685 F. Supp. 3d at 996. While the focus of false association claims is whether the trade dress "causes confusion by leading consumers to think that two products from different sources actually come from the same source," false advertising claims focus on "whether a defendant has made some false statement in advertising about the product that fundamentally misrepresents its qualities." *Id.* at 996–97. Other district courts within the Ninth Circuit have rejected false advertising claims in cases like this one, where the thrust of the plaintiff's allegations is that "because defendant has allegedly copied plaintiff's trade dress, it is falsely advertising its products as plaintiff's and causing consumer confusion." *Id.* at 997.

Here, the alleged misrepresentations are statements that Defendants' work with TAG Dynamics is sanctioned by TAG, including one statement to an unidentified vendor that "TAG Dynamics was a joint venture with TAG." (Doc. 21 at 12). As these allegations mainly target Defendants' alleged misrepresentations about their association with Plaintiff, the allegations are much more akin to a false association claim, rather than a traditional false advertising claim. Even assuming Plaintiff is alleging a claim distinguishable from its false association claim, the Court finds that Plaintiff has not alleged facts sufficient to state

a claim upon which relief may be granted.

First, as noted above, any comments made outside of the United States are not actionable under § 1125(a)(1) of the Lanham Act. *Abitron*, 600 U.S. at 415. Thus, Plaintiff does not have a likelihood of success on the merits with respect to claims relating to Defendants' actions that took place at Eurosatory 2024. (Doc. 21 at 13).

With respect to the other alleged misrepresentation that TAG Dynamics was a joint venture with Plaintiff, Plaintiff has not alleged facts to satisfy the elements of a false advertising claim. To state a claim for false advertising under Section 43(a) of the Lanham Act, Plaintiff must show that (1) Defendants made a false statement of fact in a commercial advertisement; (2) the statement deceived or had the tendency to deceive a substantial segment of its audience; (3) the deception was material, in that it was likely to influence the purchasing decision; (4) the false statement entered interstate commerce; and (5) Plaintiff has been or is likely to be injured as a result of the false statement. *Enigma Software Grp. USA, LLC v. Malwarebytes, Inc.*, 69 F.4th 665, 671 (9th Cir. 2023).

Under the first element the alleged misrepresentation must occur "in commercial advertising or promotion." 5 U.S.C. § 1125(a)(1)(B). The Ninth Circuit is clear that not all commercial speech is "promotional" as to be actionable under the Lanham Act. *Prager Univ. v. Google LLC*, 951 F.3d 991, 1000 (9th Cir. 2020). The alleged facts are severely lacking as to the context of the statement, and as such, the Court is unable to determine from the FAC whether the statement constituted commercial advertising or promotion.

Additionally, the statement must "misrepresent[] the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities." *Id.* Here, the alleged misrepresentation that "TAG Dynamics was a joint venture with TAG" (Doc. 21 at 12) is at most a statement causing confusion as to the origin of TAG Dynamic's goods, services, or commercial activities rather than their nature, characteristics, qualities, or geographic origin. In sum, Plaintiff has merely recited the elements of a false advertising claim in a conclusory fashion without asserting facts that give rise to a plausible inference of entitlement to relief. However, to the extent that

Plaintiff believes it has a false advertising claim distinctive of its false association claim, Plaintiff may file an amended complaint with supplemental facts.

**d. Count III: Unfair Competition**

Defendants argue that Plaintiff's common law unfair competition claim must be dismissed because it is substantially identical to its failed Lanham Act claims. (Doc. 27 at 19).

The Arizona Supreme Court has declined to decide whether Arizona common law recognizes a claim for unfair competition. *Orca Commc'ns Unlimited, LLC v. Noder*, 337 P.3d 545, 549 (Ariz. 2014). However, in previously assessing unfair competition claims, Arizona courts have stated that the unfair competition doctrine "encompasses several tort theories, such as trademark infringement, false advertising, 'palming off,' and misappropriation." *Fairway Constructors, Inc. v. Ahern*, 970 P.2d 954, 956 (Ariz. Ct. App. 1998). Courts applying Arizona law have declined to extend this interpretation to include theories of fraud, trespass, or conversion. *Joshua David Mellberg LLC v. Will*, 96 F. Supp. 3d 953, 963 (D. Ariz. 2015). Courts have also found that "an unfair competition claim is preempted unless it alleges elements that make it qualitatively different" from statutory claims or other torts. *See Fairway Constructors, Inc.*, 970 P.2d at 956 (Ariz. Ct. App. 1998) ("We agree that an unfair competition claim is preempted unless it alleges elements that make it qualitatively different from a copyright infringement claim."); *Joshua David Mellberg LLC*, 96 F. Supp. 3d at 963 (allowing plaintiff "amend the claim of unfair competition based on misappropriation of confidential information that is not a trade secret.").

Although this issue is not clearly settled under Arizona law, the Count is unconvinced that Plaintiff can bring a common law unfair competition claim based on Defendants' alleged conduct of "engaging in financial misconduct," "withholding key information about the company," or "making disparaging remarks about the company." (Doc. 21 at 14). Those claims are not contemplated under other unfair competition rulings, which have generally only found conduct in the realm of misappropriation to be actionable.

*See generally Joshua David Mellberg LLC*, 96 F. Supp. 3d 953; *Fairway Constructors, Inc.*, 970 P.2d 954. Additionally, Plaintiff's unfair competition claim is likely preempted to the extent it relies on Defendants' alleged false association and false advertising, as Plaintiff provides no explanation for how this claim differs from its Lanham Act claims.

Thus, that leaves Plaintiff's allegation that Defendants have "engaged in palming off or passing off by making false representations tending to induce buyers to believe the misleading impression that Defendants' work with TAG Dynamics is affiliated with or sanctioned by TAG[.]" (Doc. 21 at 14). "Palming off" or "passing off" exists when a defendant makes a false representation that tends "to induce buyers to believe that the defendant's product is that of the plaintiff." *Fairway Constructors, Inc.*, 970 P.2d at 956 (citations and quotations omitted). The Supreme Court and Ninth Circuit have recognized that § 1125(a) of the Lanham Act applies to conduct that constitutes "passing off" and "reverse passing off." *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 32 (2003); *Lamothe v. Atl. Recording Corp.*, 847 F.2d 1403, 1406 (9th Cir. 1988). Thus, without evidence that Plaintiff's "palming off" allegation is qualitatively different from its false association claim, Plaintiff's unfair competition claim is preempted to the extent it relies on such conduct. As such, Plaintiff has failed to state a claim upon which relief can be granted. However, as this claim could be remedied by additional facts or information explaining how it differs from Plaintiff's false association claim, Plaintiff will be granted leave to amend.

**e. Counts IV and V: Tortious Interference Claims**

The elements of a tortious interference claim in Arizona are "(1) a valid contract or business expectancy existed; (2) the interferer had knowledge of such business contracts or expectancy; (3) there was intentional interference causing a breach of the contract or business expectancy; and (4) resultant damages." *USI Ins. Servs. LLC v. Alliant Ins. Servs. Inc.*, No. CV-23-00192-PHX-SMB, 2023 WL 3792749, at *9 (D. Ariz. June 2, 2023). Moreover, Arizona courts have held that "an action for tortious interference with a business relationship requires a business relationship evidenced by an actual and identifiable

understanding or agreement which *in all probability* would have been completed if the defendant had not interfered." *Vazirani v. Annexus Distribs. AZ, LLC,* No. 1 CA-CV 14-0815, 2017 WL 443529, at *11 (Ariz. Ct. App. Feb. 2, 2017) (citing *Dube v. Likins*, 167 P.3d 93, 101 (Ariz. Ct. App. 2007)).

Here, Plaintiff has not alleged facts sufficient to establish its tortious interference claims. With all three of the business expectancies that Plaintiff alleges Defendants disrupted, Plaintiff fails to allege facts demonstrating the requisite showings that (1) the business expectancies were not completed, or the contracts were breached; (2) the business expectancies would have in all probability been completed had Defendants not interfered; and (3) resultant damages. Specifically, Plaintiff's Count IV does not allege that TAG was in all likelihood going to purchase the company that Defendant Lutzker allegedly purchased or that TAG suffered damages as a result of Defendant Lutzker's purchase. (Doc. 21 at 15). Nor does Plaintiff allege that Defendant's interference with its line of credit from Commercial Bank resulted in Plaintiff not receiving the line of credit. (*Id.*). Plaintiff's allegations that Defendants' statements created a misleading impression that TAG Dynamics was sanctioned by TAG also fails to state a plausible claim, as Plaintiff points to no specific business expectancy that was in all probability going to be completed and that was disrupted. (*Id.*). As noted above, plaintiffs must identify an "actual and identifiable understanding or agreement" to successfully plead a tortious interference claim; generalized assertions that conduct disrupted relationships is not enough. Lastly, "assisting and engaging [Plaintiff's] competitors" fails to state a plausible claim for relief, as well. (*Id.*). As such, Plaintiff's Count IV must be dismissed in its entirety. However, as supplemental facts may cure the identified deficiencies, Plaintiff will be allowed leave to amend with respect to this claim.

With respect to Count V, Plaintiff admits later in the FAC that the contract was completed. (*See* Doc. 21 at 19). As such, the Court finds that additional facts could not cure the deficiencies and that leave to amend would be futile.

///

**f. Count VI: Civil Conspiracy**

"Under Arizona law, a claim of civil conspiracy must be based on an underlying tort[.]" *Cervantes v. Countrywide Home Loans, Inc*., 656 F.3d 1034, 1041 (9th Cir. 2011). Plaintiff has not stated a plausible claim for relief for any of the tort claims included in its FAC. Thus, Plaintiff has failed to state a plausible claim for relief on its civil conspiracy claim, and this claim must be dismissed. If Plaintiff files a second amended complaint supplying additional facts that remedy its other tort claims and believes it has a valid civil conspiracy claim, Plaintiff may include it in its amended complaint.

**g. Count VII: Breach of Fiduciary Duty**

Defendant Lutzker argues that Plaintiff's claim that he breached fiduciary duties to Plaintiff must be dismissed, as Plaintiff is a Nevada LLC and under Nevada law, LLC managers only owe fiduciary duties if such duties are expressly established in the LLC's operating agreement. (Doc. 27 at 23).

Because Plaintiff is a Nevada LLC (Doc. 21 at 2), Nevada law applies. *See* Ariz. Rev. Stat. Ann. § 29-390(A)(1)–(2) ("Subject to subsection D of this section, the law of the jurisdiction of formation of a foreign limited liability company governs both of the following: [t]he internal affairs of the company [and] [t]he liability of a member as a member and a manager as a manager for a debt, obligation or other liability of the company"); *AMERCO v. Shoen*, 907 P.2d 536, 538 n.1 (Ariz. Ct. App. 1995), corrected (Aug. 29, 1995) ("Because AMERCO is a Nevada Corporation, and because this lawsuit concerns fiduciary relations between shareholders and management, where there is a choice of law to be made, the law of Nevada, the place of incorporation, should apply."); *Brown v. Hope*, No. 1 CA-CV 20-0059, 2021 WL 503249, at *2 (Ariz. Ct. App. Feb. 11, 2021) ("CMEGO was established as a limited liability company organized under Nevada law, so Nevada law controls the method and effect of dissolution.").

"A claim for breach of fiduciary duty under Nevada law requires a plaintiff to demonstrate a fiduciary duty exists, that duty was breached, and the breach proximately caused the damages." *JPMorgan Chase Bank, N.A. v. KB Home*, 632 F. Supp. 2d 1013,

1024 (D. Nev. 2009). The Nevada Supreme Court has clarified that while an LLC's members, managers, and other involved persons can contract to fiduciary duties, "such duties do not necessarily exist otherwise, aside from the implied covenant of good faith and fair dealing." *Israyelyan v. Chavez*, 466 P.3d 939 (Nev. 2020); *Muney v. Arnould*, 524 P.3d 491 (Nev. 2023) ("Today, in agreement with the *Israyelyan* court, we too find that the plain language of NRS 86.298 does not impose fiduciary duties upon LLCs other than the duties of good faith and fair dealing, unless LLC members contract to additional duties."). Moreover, under Nev. Rev. Stat. Ann. § 86.928, any fiduciary duties must be "expressly prescribed by the articles of organization or the operating agreement." Nev. Rev. Stat. Ann. § 86.298. "In Nevada, a 'fiduciary relationship is deemed to exist when one party is bound to act for the benefit of the other party. Such a relationship imposes a duty of utmost good faith.'" *HP Tuners, LLC v. Cannata*, No. 318CV00527LRHWGC, 2019 WL 3848792, at *4 (D. Nev. Aug. 15, 2019) (citing *Giles v. General Motors Acceptance Corp*., 494 F.3d 865, 880–81 (9th Cir. 2007)). Of note, Nevada Supreme Court has indicated that the implied covenant of good faith does not amount to a fiduciary duty of utmost good faith and loyalty. *See Renown Health v. Holland & Hart, LLP*, 437 P.3d 1059, at *2 (Nev. 2019) (citing Sandra K. Miller, *What Fiduciary Duties Should Apply to the LLC Manager After More Than a Decade of Experimentation?*, 32 J. Corp. L. 565, 595 (2007) ("The implied covenant of good faith is not a fiduciary duty and is arguably narrower in scope than a fiduciary duty.")).

Plaintiff asserts that Defendant Lutzker owed the fiduciary duties of loyalty, utmost good faith, and a high degree of care. (Doc. 21 at 4). Plaintiff does not allege that these fiduciary duties were articulated in its operating agreement or articles of organization, and as such, Plaintiff's does not demonstrate that fiduciary duty existed. The claim will be dismissed, but Plaintiff will be granted leave to amend to provide additional facts from which the Court can reasonably infer that Plaintiff's operating agreement or articles of organization imposed fiduciary duties upon Defendant Lutzker.

///

**h. Count VIII: Defamation**

Defendants move to dismiss Plaintiff's defamation claim because Plaintiff fails to supply requisite facts about the statements or show that the statements were defamatory statements of objective fact. (Doc. 27 at 25).[1]

Under Arizona common law, a defamatory statement "must be false and must bring the defamed person into disrepute, contempt, or ridicule, or must impeach [that person]'s honesty, integrity, virtue, or reputation." *Sign Here Petitions LLC v. Chavez*, 402 P.3d 457, 462 (Ariz. Ct. App. 2017). In assessing defamation claims, courts first consider "whether, under all the circumstances, a statement is capable of bearing a defamatory meaning." *Id.* at 463 (citing *Yetman v. English*, 811 P.2d 323, 331 (Ariz. 1991)). This step considers whether the statement can be reasonably understood to state or imply an objective fact. *Id.* Courts must consider whether the general tenor and impression created by the statement could be considered defamatory by a reasonable listener, as well. *Id.* Next, the court must determine whether the statement's allegedly defamatory meaning was, in fact, conveyed. *Id.* at 464.

Arizona courts have emphasized the importance of thorough factual allegations in defamation actions, "because the context and language of an allegedly defamatory statement is crucial to the court's analysis." *BLK III, LLC v. Skelton*, 506 P.3d 812, 817 (Ariz. Ct. App. 2022), *as amended* (Feb. 17, 2022) (citation omitted). "That is, without knowing the precise language of the statement allegedly uttered, the court cannot analyze whether the statement is objectively verifiable as true or false—a critical question in determining whether a defamation action may lie." *Id.* (citations omitted). Instead, a "plaintiff must clearly and specifically allege the content and context of the challenged statements and why and how they were defamatory." *Id.* at 817–18.

Plaintiff's allegations are factually insufficient: assertions that Defendants have

---

[1] Defendants do not move to dismiss Plaintiff's defamation claim as it pertains to Defendant Gailey's alleged statement that Plaintiff was "merely a broker and has no manufacturing capability." (Doc. 27 at 26). As such, that claim will proceed.

spread falsehoods, "concocted a reckless narrative about TAG's financial statements," "shar[ed] disparaging remarks," and "leaked inaccurate and untruthful information" do not allow the Court the opportunity to analyze what the statements even were, let alone whether they were objectively verifiable as true or false. (Doc. 21 at 19). Nor does the allegation that "Defendants stated that TAG Dynamics was a joint venture with TAG" sufficiently detail the precise language, content, and context of the allegedly defamatory statements. (*Id.* at 20). As such, Plaintiff's defamation claim, with the exception of the statements not included in Defendants' Motion, is dismissed. Because additional facts could remedy Plaintiff's claims, Plaintiff will be granted leave to amend.

**i. Counts IX and X: Breach of Contract**

In Arizona, restrictive covenants are generally disfavored and strictly construed against employers. Under Arizona law,

> [a] restrictive covenant is reasonable and enforceable when it protects some legitimate interest of the employer beyond the mere interest in protecting itself from competition such as preventing competitive use, for a time, of information or relationships which pertain peculiarly to the employer and which the employee acquired in the course of the employment.

*Bed Mart, Inc. v. Kelley*, 45 P.3d 1219, 1221 (Ariz. Ct. App. 2002) (cleaned up). Generally, non-compete and non-solicitation restrictions are enforceable if they are reasonable with respect to duration, geographic scope, and the range of activities affected. *Traditions Health LLC v. Paulson*, No. CV-23-01876-PHX-SMB, 2023 WL 6318015, at *3 (D. Ariz. Sept. 28, 2023) (citations omitted).

Plaintiff attached the relevant agreements to its FAC. (*See* Doc. 21-1). The agreement provides post-employment restrictions on soliciting employees or contractors engaged by TAG; soliciting client, customers, or subcontractors or inducing or encouraging any of TAG's business relations to cease doing business with TAG; and "work[ing] on, plan[ning], prepar[ing] for, organiz[ing] or engag[ing]" in any business activities in the Restricted Field within the Business Territory. (*Id.* at 9). The relevant Business Territory, as defined by the non-competition agreement, "means the entire United States, Africa,

Middle East, Central America, and South America." (*Id.* at 6). The "Restricted Field" provision limits activities within the business of selling and marketing armored vehicles. (*Id.* at 7). The non-competition restriction and client and employee non-solicitation agreements have a 12-month limit for Defendant Holden and a 24-month limit for Defendant Gailey. (*Id.* at 6–7; Doc. 21-2). The agreement also contains provisions prohibiting the unauthorized disclosure or use of confidential company information. (*Id.* at 8).

Here, Plaintiff has not stated a claim upon which relief may be granted, as the non-competition and non-solicitation restrictive covenants are unreasonable in scope and thus unenforceable. The geographic scope is extremely broad, encompassing several continents and the entire United States. "This Court, applying Arizona law, has not favored restrictive employment provisions with unlimited geographical reach." *Karp v. Avella of Deer Valley Inc.*, No. CV13-1885 PHX DGC, 2013 WL 5435212, at *1 (D. Ariz. Sept. 30, 2013) (collecting cases); *see also Olliver/Pilcher Ins., Inc. v. Daniels*, 715 P.2d 1218, 1220 (Ariz. 1986) (finding statewide scope to be overbroad). Worldwide geographic scopes have been found reasonable where the business is conducted internationally and where the restriction is limited in scope in other respects. *See Cont'l Promotion Grp., Inc. v. Garvin*, No. CV 08-0070-PHX-SRB, 2009 WL 10673482, at *5 (D. Ariz. May 22, 2009). However, under Arizona law, courts are hesitant to find that a company has a legitimate protectable interest in areas that they never worked. *See Elec. Payment Providers, Inc. v. Kennedy*, No. 1 CA-CV 20-0382, 2021 WL 6087642, at *4 (Ariz. Ct. App. Dec. 23, 2021) ("[Plaintiff] has provided no controlling legal authority demonstrating they have a protectable interest in denying defendants the right to compete in geographic areas in which they never provided service while working for [Plaintiff]. To be sure, Arizona law is contrary."). Here, Plaintiff has not alleged that the restriction is tailored to protect its legitimate business interests or that Defendants themselves ever did business in any of the areas outlined in the agreement.

To that end, the prohibition on contacting any of TAG's business relations is unenforceable, as Arizona courts typically restrict solicitation only of "individuals with

whom the Defendants have formed a meaningful relationship." *Nouveau Riche Corp. v. Tree*, No. CV08-1627-PHX-JAT, 2008 WL 5381513, at *5 (D. Ariz. Dec. 23, 2008); *Karp*, 2013 WL 5435212, at *1. Plaintiff's FAC does not provide facts showing the non-solicitation restriction is narrowly tailored to Defendants' meaningful contacts.

Moreover, the Courts is skeptical of the enforceability of the restriction on any activities related to the business of selling and marketing armored vehicles, as well. Typically, courts favor activity restraints that are "limited to the particular specialty of the present employment." *Compare Valley Med. Specialists v. Farber*, 982 P.2d 1277, 1285 (Ariz. 1999) (rejecting non-compete prohibition on doctor's practice of all medicine rather than only his specialty), *with Bed Mart, Inc. v. Kelley*, 45 P.3d 1219, 1223 (Ariz. Ct. App. 2002) (accepting prohibition on subsequent employment at mattress stores specifically, because plaintiff could still obtain employment in his specific area of sales expertise—mattresses—at other furniture and department stores).

Lastly, Plaintiff's FAC purports no facts to support that the durations of the restrictions are reasonable. Generally, restrictive covenants are found reasonable if they are only as long as necessary to replace the employee and train a replacement or give the replacement a chance to demonstrate his effectiveness to do the job. *Amex Distrib. Co. v. Mascari*, 724 P.2d 596, 604 (Ariz. Ct. App. 1986). Restrictive covenants may also be found reasonable if the duration lasts as long as necessary to render confidential information obsolete. *See generally Bed Mart*, 45 P.3d at 1223. Plaintiff has not alleged facts demonstrating how the durations are justified relative to training replacements, rendering confidential information obsolete, or its other legitimate business interests beyond providing conclusory assertions.

While Arizona courts allow for severance of unenforceable provisions, courts cannot add terms or rewrite provisions. *Karp*, 2013 WL 5435212, at *2. The contracts contain severability clauses. (*See* Docs. 21-1 at 10, 21-2 at 6). However, because the FAC lacks any facts that shed light on Plaintiff's legitimate business interests, the Court cannot determine what terms should be stricken and "blue pencil" the agreement to salvage its

reasonableness.

With respect to the confidentiality provision, Plaintiff has not clearly alleged that Defendants Holden and Gailey are in breach of contract. Plaintiff's FAC alleges that Defendants have breached the confidentiality provisions "by using and disclosing Plaintiff's proprietary, confidential and trade secret information to compete against Plaintiff" but does not provide facts beyond these conclusory allegations. (Doc. 21 at 21–22). While the confidentiality provision is likely enforceable, the FAC does not allege facts that, taken as true, state a claim for relief for breach of contract. As with Plaintiff's other claims, additional facts may remedy the identified deficiencies and as such, Plaintiff will be granted leave to amend.

## IV. CONCLUSION

All told, "whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. A district court should normally grant leave to amend unless it determines that the pleading could not possibly be cured by allegations of other facts. *Cook, Perkiss & Liehe v. N. Cal. Collection Serv.*, 911 F.2d 242, 247 (9th Cir. 1990).

While Plaintiff only needs to allege enough facts to "plausibly give rise to an entitlement to relief," that has not occurred here. *Iqbal*, 556 U.S. at 679. Therefore, the Amended Complaint fails to satisfy the pleading standards set forth by Rule 8 and 12(b)(6), and its dismissal is both warranted and necessary. One of Plaintiff's claims cannot be cured with further amendment and is thus futile. *See Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995) ("Futility of amendment can, by itself, justify the denial of a motion for leave to amend."). Specifically, Plaintiff's Count V – Tortious Interference with Contract is dismissed in its entirety. Plaintiff cannot allege additional relevant facts consistent with its Amended Complaint that would save this claim. *See Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986) ("If a complaint is dismissed for failure to state a claim, leave to amend should be granted unless the court determines that the

allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.”). However, Plaintiff will be granted leave to amend Counts One through Four and Six through Ten to cure the other deficiencies identified by the Court throughout this Order. Accordingly,

**IT IS ORDERED** that Defendants’ Request for Judicial Notice (Doc. 28) is **denied**.

**IT IS ORDERED** that Defendants’ Partial Motion to Dismiss (Doc. 27) is **granted**.

**IT IS FURTHER ORDERED** that Plaintiff’s Counts I, II, III, IV, VI, VII, IX, and X are **dismissed without prejudice** and **with leave to amend**. Plaintiff must file an Amended Complaint by **March 28, 2025**.

**IT IS FURTHER ORDERED** that Plaintiff’s Count VIII: Defamation is **dismissed in part**, in accordance with this Order, **without prejudice** and **with leave to amend**.

**IT IS FURTHER ORDERED** that Plaintiff’s Count V is **dismissed with prejudice** and **without leave to amend**.

Dated this 28th day of February, 2025.

Honorable Steven P. Logan
United States District Judge