**WO**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

Armored Group LLC,

Plaintiff,

vs.

Monty Lutzker, et al.,

Defendants.

No. CV-24-01516-PHX-SPL

**ORDER**

Before the Court is Monty Lutzker, Beau Gailey, Ryan Holden, and Marne Consulting Group LLC's Motion to Dismiss the Third Amended Complaint (Doc. 128). Having considered the parties' briefing (Docs. 128, 129, 132), the Court now rules as follows.[1]

**I. Background**

Plaintiff The Armored Group, LLC ("Plaintiff" or "TAG") brings a variety of claims arising out of a dispute with former employees, Defendants Monty Lutzker, Beau Gailey, and Ryan Holden (collectively "Defendants"). (Doc. 121). Plaintiff manufactures and supplies armored vehicles globally. (*Id.* at ¶¶ 17–25). Defendant Lutzker's employment with Plaintiff was terminated in December 2023. (*Id.* at ¶ 96). Defendant Gailey subsequently separated from Plaintiff in January 2024, and Defendant Holden separated

[1] Because it would not assist in resolution of the instant issues, the Court finds the pending motions are suitable for decision without oral argument. *See* LRCiv. 7.2(f); Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

from Plaintiff in March 2024. (*Id.* at ¶ 98). After Defendants' employment ended, Plaintiff alleges Defendants began using a company named "TAG Dynamics" to engage in competitive conduct with Plaintiff. (*Id.* at ¶ 98). Specifically, Defendants allegedly solicited Plaintiff's customers using Plaintiff's logo and promotional materials, (*Id.* at ¶¶ 103–105), and made defamatory statements about Plaintiff to German media. (*Id.* at ¶ 83). Plaintiff further alleges Defendant Lutzker attempted to have Plaintiff's line of credit with Commercial Bank cancelled, (*Id.* at ¶ 76), and undermined Plaintiff's purchase negotiations with the company Man Lift, (*Id.* at ¶¶ 54–69). Plaintiff claims the solicitation of its customers, employees, and contractors violated Defendants' employment agreements and has harmed Plaintiff's reputation, revenue, and business prospects. (*Id.* at ¶¶ 111–121). On June 21, 2024, Plaintiff filed this suit against Defendants. (Doc. 1). On April 9, 2026, Plaintiff filed its Third Amended Complaint ("TAC"). (Doc. 121). Defendants filed the instant Motion to Dismiss on May 7, 2026. (Doc. 128).

## II. Legal Standard

A court may dismiss a complaint for failure to state a claim under Rule 12(b)(6) for two reasons: (1) lack of a cognizable legal theory, or (2) insufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A claim is facially plausible when it contains "factual content that allows the court to draw the reasonable inference" that the moving party is liable. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Factual allegations in the complaint should be assumed true, and a court should then "determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. Facts should be viewed "in the light most favorable to the non-moving party." *Faulkner v. ADT Sec. Servs., Inc.*, 706 F.3d 1017, 1019 (9th Cir. 2013).

## III. Discussion

### A. Tortious Interference

#### 1. Lutzker

A plaintiff asserting a tortious interference with a business expectancy claim must allege "(1) the existence of a valid business expectancy; (2) the interferer's knowledge of

the business expectancy; (3) the interferer intentionally induced or caused termination of the business expectancy; and (4) damage suffered as a result of termination of the business expectancy." *Dube v. Likins*, 167 P.3d 93, 99 (Ariz. Ct. App. 2007). The expectancy must be more than a mere hope of future business. *Id*. Defendants argue that Plaintiff fails to plausibly allege that the acquisition of Man Lift would have proceeded but for Defendant Lutzker's conduct. (Doc. 128 at 7). Defendants contend that Plaintiff's counterproposal prevented the transaction and that Plaintiff fails to adequately allege damages. (*Id*. at 7–8).

Plaintiff alleges that it was actively negotiating the acquisition of Man Lift and IF Armor. (Doc. 121 at ¶ 134). It further alleges that Defendant Lutzker advised Plaintiff to remove Man Lift from the transaction, withheld material information about the seller, and secretly pursued Man Lift for himself. (*Id*. at ¶ 136). Plaintiff also alleges that Defendant Lutzker's conduct deprived it of the opportunity to acquire Man Lift and caused millions of dollars in damages. (*Id*. at ¶ 61). These allegations plausibly establish business expectancy, intentional interference, and damages. *See Dube*, 167 P.3d at 101 (A tortious interference with a business relationship claim must be "evidenced by an actual and identifiable understanding or agreement which in all probability would have been completed if the defendant had not interfered.") (citation omitted); *see also* 44B Am. Jur. 2d Interference § 5 (2026) ("All that is needed to establish a business expectancy is a relationship between parties contemplating a contract, with at least a reasonable expectation of fruition, although this relationship must be known, or reasonably apparent, to the interferor."). Although Defendants contend that Plaintiff's counterproposal prevented the acquisition, Defendants alternative explanation does not render Plaintiff's tortious interference theory implausible at this stage. *See Eclectic Props. E., LLC v. Marcus & Millichap Co*., 751 F.3d 990, 996–97 (9th Cir. 2014). Accordingly, Plaintiff sufficiently pleads a tortious interference with a business expectancy claim against Defendant Lutzker.

**2. Holden and Gailey**

As to Defendants Holden and Gailey, Plaintiff alleges that they knew of Plaintiff's business expectancies, interfered through misrepresentations about Plaintiff's business,

and caused damages. (*Id.* at ¶¶ 141–143). Defendants argue that Plaintiff does not allege that either Defendant interfered with Plaintiff's attempted Man Lift acquisition. (Doc. 128 at 6–7).

The Court agrees. Plaintiff alleges no facts connecting Defendants Holden or Gailey to the Man Lift acquisition. Nor does Plaintiff identify another specific business expectancy with which either Defendant intentionally interfered. Because Plaintiff must "identify the specific relationship with which the defendant interfered," Plaintiff's allegations are insufficient. *Dube*, 167 P.3d at 101. Accordingly, Plaintiff fails to state a tortious interference with a business expectancy claim against Defendants Holden and Gailey.

**B. Defamation**

Defendants argue that Plaintiff's defamation claim against Defendants Lutzker and Gailey fail, with one exception. (Doc. 128 at 9). Defendants do not address Plaintiff's defamation claim against Defendant Gailey based on statements allegedly made to customers. (*Id.* at 9–12). Accordingly, the Court construes that claim as uncontested at this stage.

"In order to state a claim for defamation, a plaintiff must allege (1) that the defendant made a false statement; (2) that the statement was published or communicated to someone other than plaintiff; and (3) that the statement tends to harm plaintiff's reputation." *Donahoe v. Arpaio*, 869 F. Supp. 2d 1020, 1061 (D. Ariz. 2012).

**1. Commercial Bank**

As to the Commercial Bank allegations, Plaintiff alleges that Defendant Lutzker made knowingly false statements to Commercial Bank's CEO that Plaintiff "submitted fraudulent financial statements and misrepresented its financial condition in connection with its application for a $12 million line of credit." (Doc. 121 at ¶ 152). Plaintiff further alleges that the statements required it to spend several months reviewing its financial statements with Commercial Bank to demonstrate their accuracy. (*Id.* at ¶ 154). Defendants argue that Plaintiff fails to identify the specific financial information underlying Defendant Lutzker's allegedly defamatory statements and fails to plead defamation per se or special

damages. (Doc. 128 at 9–11).

Plaintiff's allegations sufficiently identify the content and context of the statements, which were objectively verifiable. *See BLK III, LLC v. Skelton*, 506 P.3d 812, 817–18 (Ariz. Ct. App. 2022) (Knowing the precise language of the statement allegedly uttered, allows the court to analyze whether the statement is objectively verifiable as true or false, which is a critical question in determining the validity of a defamation action.). Construed in Plaintiff's favor, the accusation of financial fraud in connection with Plaintiff's business dealings tends to injure Plaintiff in its business and therefore supports a claim for defamation per se. *See Modla v. Parker*, 495 P.2d 494, 496–97 (Ariz. Ct. App. 1972) (A slanderous utterance constitutes defamation per se when it "prejudice[s] the person in the profession, trade or business in which he is actually engaged."). Therefore, Plaintiff need not plead special damages to proceed with its theory. *Id*.

**2. German Media**

Plaintiff alleges that "Lutzker and/or Gailey" knowingly made false statements to German media outlets asserting that Plaintiff's vehicles lacked required landmine or blast protection, had defective or weak axels that caused axel failure, and were delivered late because of Plaintiff's deficiencies. (Doc. 121 at ¶ 157). Plaintiff further alleges that these statements prompted several intensive governmental investigations into its business operations. (*Id*. at ¶ 160).

Accepting these allegations as true, the statements concerning vehicle safety, mechanical defects, and delivery performance are objectively verifiable and plausibly tend to injure Plaintiff's business reputation. *See BLK III*, 506 P.3d at 817–18. At the pleading stage, these allegations sufficiently support a claim for defamation per se. *See Molda*, 495 P.2d at 496–97. Although Plaintiff alleges that "Lutzker and/or Gailey" made the statements, the specific factual allegations provide Defendants with fair notice of the claim against them. *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). Accordingly, Plaintiff sufficiently states a defamation claim against Defendant Lutzker based on the Commercial Bank allegations and against Defendants Lutzker and Gailey based on the German media

allegations.

**C. Civil Conspiracy**

"For a civil conspiracy to occur two or more people must agree to accomplish an unlawful purpose or to accomplish a lawful object by unlawful means, causing damages." *Baker ex rel. Hall Brake Supply, Inc. v. Stewart Title & Tr. of Phoenix, Inc.*, 5 P.3d 249, 256 (Ariz. Ct. App. 2000) (citation omitted). "Under Arizona law, a claim of civil conspiracy must be based on an underlying tort[.]" *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1041 (9th Cir. 2011).

**1. Tortious Interference**

The Court finds that only Defendant Lutzker's alleged interference with Plaintiff's acquisition of Man Lift states a plausible claim for tortious interference with a business expectancy. However, Plaintiff does not allege that Defendant Lutzker agreed with another person to pursue the unlawful objective. (Doc. 121 ¶¶ 134–138). Accordingly, tortious interference with a business expectancy does not support Plaintiff's civil conspiracy claim.

**2. Defamation**

Plaintiff's defamation allegations concerning Defendant Lutzker's statements to Commercial Bank likewise describe Defendant Lutzker acting alone. (*Id*. at ¶¶ 152–154). Additionally, although Defendants do not challenge the defamation claim against Defendant Gailey, that allegation also describes Defendant Gailey acting alone. (*Id*. at ¶ 155).

As to the statements made to German media outlets, Plaintiff repeatedly alleges "Lutzker and/or Holden" made the statements. (*Id*. at ¶¶ 156–161). Although a conspiratorial agreement need not be express and may be inferred from circumstantial evidence, Plaintiff must allege facts supporting a plausible inference that Defendants agreed to commit the underlying tort. *Dawson v. Withycombe*, 163 P.3d 1034, 1053 (Ariz. Ct. App. 2007). Here, Plaintiff's allegations suggest uncertainty as to whether one or both Defendants made the alleged defamatory statements. Accordingly, the Court does not infer that Defendants agreed to further an unlawful purpose.

### 3. Unidentified Tort

Plaintiff alleges that Defendants Lutzker and Gailey deliberately underbid several projects while employed by Plaintiff, including a project involving the Israeli government, as part of a coordinated scheme to sabotage Plaintiff's operations before leaving to establish a competing business. (Doc. 121 at ¶¶ 44–53). Although Plaintiff does not identify the underlying tort supporting its civil conspiracy claim, the Court may apply the law to the facts alleged. *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11 (2014) ("[Federal pleading rules] do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted.").

Under Arizona law, an employee owes the employer a duty of loyalty and may not actively compete with the employer while still employed. *Taser Int'l, Inc. v. Ward*, 231 P.3d 921, 926 (Ariz. Ct. App. 2010). Deliberate disloyal conduct intended to harm the employer may support a claim for breach of fiduciary duty. *See Atkinson v. Marquart*, 541 P.2d 556, 558 (1975). Plaintiff's allegations that Defendants Lutzker and Gailey intentionally underbid projects to sabotage Plaintiff while still employed plausibly support a breach of fiduciary duty theory. Furthermore, the allegations that Defendants intentionally underbid projects to sabotage Plaintiff, coupled with their subsequent formation of a competing business, support a reasonable inference that Defendants Lutzker and Gailey agreed to engage in the alleged disloyal conduct. *See Dawson*, 163 P.3d at 1053. Accordingly, accepting the well-pleaded allegations as true and drawing reasonable inferences in Plaintiff's favor, the Court concludes that Plaintiff plausibly alleges a civil conspiracy claim based on an underlying breach of fiduciary duty.

## D. Breach of Contract

### 1. Non-Compete and Non-Solicitation

Under Arizona Law, restrictive covenants are enforceable only if they are no broader than necessary to protect the employer's legitimate business interests. *Valley Med. Specialists v. Farber*, 982 P.2d 1277, 1283 (1999). "[E]mployers have a legitimate interest in retaining their customer base." *Id.* at 1284. "The legitimate purpose of post-employment

restraints is 'to prevent competitive use, for a time, of information or relationships which pertain peculiarly to the employer and which the employee acquired in the course of the employment.'" *Id*. at 1281 (citation omitted).

**i. Non-Compete**

In its prior Order, the Court determined that the non-compete provision was overbroad because its geographic restriction extended to several continents and its activity restriction prohibited the sale and marketing of all armored vehicles. (Doc. 119 at 14). Although Plaintiff alleges that the provision's duration is reasonable, that does not cure its excessive geographic and activity restrictions. *See Varsity Gold, Inc. v. Porzio*, 45 P.3d 352, 356 (Ariz. Ct. App. 2002) ("Without a geographic limitation, the non-competition clause cannot be enforced."). The provision therefore restricts competition beyond Plaintiff's legitimate business interests.

The Court also will not rewrite the provision to make it enforceable. Arizona courts may sever grammatically distinct, unreasonable language but may not rewrite a restrictive covenant to make it reasonable. *Farber*, 982 P.2d at 1286. Although the Agreement authorizes the Court to narrow an unreasonable geographic restriction, it lists every state and numerous countries. (Doc. 121-1 at 7, 14). As *Varsity Gold* cautions, "[b]y simply authorizing a court to rewrite unreasonable restrictions, an employer may relieve itself of crafting a reasonable restriction with the added benefit that departing employees may adhere to an onerous covenant." *Varsity Gold*, 45 P.3d at 356. Therefore, the Court will not rewrite this otherwise unreasonable restriction. Accordingly, the non-compete provision is unenforceable on its face.

**ii. Non-Solicitation**

**(a) Client Non-Solicitation**

Plaintiff alleges that Defendants Holden and Gailey breached the non-solicitation provision. (Doc. 121 at ¶¶ 167, 182). The provision prohibits Defendants from providing services similar to Plaintiff's to "any client, customer, or subcontractor with whom [Defendant] ha[s] had contact on behalf of the Company, or as a result of [Defendant's]

Relationship with the Company[.]" (Doc. 121-1 at 10, 17). The provision lasts twelve months for Defendant Holden and twenty-four months for Defendant Gailey. (*Id*. at 7, 14). Its geographic scope extends to the "Business Territory," which the Court determined is unreasonable. (*Id*. at 10, 17).

These restrictions constitute an "antipiracy or hands-off agreement, [which] is less restrictive than a covenant not to compete and is designed to prevent former employees from using information learned during their employment to divert or to steal customers from the former employer." *Alpha Tax Servs., Inc. v. Stuart*, 761 P.2d 1073, 1075 (Ariz. Ct. App. 1988). Plaintiff operates an international business, and the provision appears tailored to customers with whom Defendants had a prior relationship. *See Nouveau Riche Corp. v. Tree*, No. CV 08-1627-PHX-JAT, 2008 WL 5381513, at *5 (D. Ariz. Dec. 23, 2008) ("[A] non-solicitation restriction may only protect against solicitation of those individuals with whom the Defendants have formed a meaningful relationship."); *see also Karp v. Avella of Deer Valley Inc*., No. CV13 1885 PHX DGC, 2013 WL 5435212, at *1 (D. Ariz. Sept. 30, 2013). Moreover, the reasonableness of a restrictive covenant's duration presents a fact-specific inquiry that the Court need not resolve at the pleading stage. *Amex Distrib. Co., Inc. v. Mascari*, 724 P.2d 596, 604 (Ariz. Ct. App. 1986). Considering these factors together, the Court cannot conclude at this stage that the provision is unreasonable on its face. *See Olliver/Pilcher Ins., Inc. v. Daniels*, 715 P.2d 1218, 1219–20 (1986) ("If the contract dealt only with preventing piracy of accounts by former employees, its statewide scope would not be considered unreasonable or oppressive."); *see also* Karp, 2013 WL 5435212, at *1 (An overly broad geographic scope provision "would be less problematic if the provision was limited to customers or suppliers with whom Plaintiff previously did business.").

Under Arizona law, a breach of contract claim requires a contract, a breach, and resulting damages. *Gordon Grado M.D., Inc. v. Phoenix Cancer & Blood Disorder Treatment Inst. PLLC*, 603 F. Supp. 3d 799, 818 (D. Ariz. 2022). As to Defendant Holden, Plaintiff alleges that he contacted the CEO of a Nevada company that was Plaintiff's

customer and sent promotional materials for his competing business. (Doc. 121 at ¶ 114). As to Defendant Gailey, Plaintiff alleges that he solicited Plaintiff's vendors at the 2024 Eurosatory Conference and misrepresented his competing business as Plaintiff's. (*Id*. at ¶ 112).

These allegations, however, do not plausibly establish that the individuals allegedly solicited had the requisite employment-related contact with either Defendant or that Plaintiff suffered damages from the alleged solicitations. Accordingly, Plaintiff fails to state a breach of contract claim against either Defendant under the client non-solicitation provision.

**(b) Employee Non-Solicitation**

There is an additional employee non-solicitation provision that prohibits Defendants from soliciting "any employee or contractor" of Plaintiff. (Doc. 121-1 at 10, 17). The reasonableness of this provision depends on a fact-specific inquiry, including the size and structure of Plaintiff's business and Defendants' relationships and contacts with Plaintiff's employees. *See Nouveau Riche*, 2008 WL 5381513, at *9 ("Given the fact that these individuals number in the thousands, work in multiple different states, and are often unknown to one another, Plaintiff is not likely to establish a protectable business interest in restricting Defendants from soliciting them as a whole."). The Court need not resolve these factual questions at the pleading stage and cannot conclude the provision is unreasonable on its face.

Plaintiff alleges that Defendants Gailey and Holden separately contacted the same "key TAG engineer," asking, "[a]re you ready to work with us yet[]" and soliciting the engineer to work on armored cars in October and December 2024, respectively. (Doc. 121 at ¶ 118). Plaintiff also alleges that Defendants solicited other specific employees, including individuals identified as "Yaron Livnat" and "Scotty Hester." (*Id*.). Plaintiff further alleges that Defendants' conduct caused monetary damages and reputational harm. (Doc. 121 at ¶ 121).

Defendants argue that Plaintiff fails to allege that their solicitation efforts were

successful or that Plaintiff suffered resulting damages. (Doc. 128 at 14). At this stage, however, drawing all reasonable inferences in Plaintiff's favor and accepting well-pleaded factual allegations as true, the Court concludes that Plaintiff plausibly alleges that Defendants solicited Plaintiff's employees in violation of the provision. Defendants' arguments concerning the success of their solicitation efforts and the resulting damages raise factual questions that the Court need not resolve at the pleading stage. *See Steinberger v. McVey ex rel. Cnty. of Maricopa*, 318 P.3d 419, 435 (Ariz. Ct. App. 2014). Accordingly, Plaintiff sufficiently states a breach of contract claim against Defendants Holden and Gailey based on the employee non-solicitation provision.

**2. Confidentiality**

Plaintiff also alleges that Defendants Holden and Gailey breached the confidentiality provision. (Doc. 121 at ¶¶ 167, 182). Specifically, Plaintiff alleges that its customer lists, vendor information, and pricing information are all confidential information protected by the confidentiality provision. (*Id.* at ¶ 119). The provision prohibits Defendants from using such information for their own benefit or the benefit of others during or after their relationship with Plaintiff. (Doc. 121-1 at 9, 16). Plaintiff alleges that, after leaving Plaintiff's company, Defendants Holden and Gailey used this information to approach Plaintiff's customers and vendors, and they submit competing quotes that undercut Plaintiff's prices, thereby benefiting their competing business. (Doc. 121 at ¶¶ 119–120.). Plaintiff further alleges it developed this information "at substantial cost over many years." (*Id.* at ¶ 41). Defendants argue that Plaintiff fails to identify with sufficient specificity the confidential information they allegedly used to gain a competitive advantage. (Doc. 128 at 16).

"[A] true trade secret is entitled to protection of indefinite duration." *Amex Distrib. Co.,* 724 P.2d at 603. A customer list may qualify for trade secret protection when it represents a "selective accumulation of detailed, valuable information about customers[.]" *Calisi v. Unified Fin. Servs., LLC*, 302 P.3d 628, 631 (Ariz. Ct. App. 2013). At this stage, the Court cannot conclude that the confidentiality provision is unreasonable on its face.

Nor can the Court determine on the pleadings alone, whether the information Defendants allegedly exploited qualifies as a trade secret. Accepting Plaintiff's well-pleaded allegations as true, Plaintiff plausibly alleges that Defendants Holden and Gailey used Plaintiff's proprietary customer lists and pricing information, which Plaintiff alleges falls within the confidentiality provision, to compete for Plaintiff's existing customers. Accordingly, Plaintiff sufficiently states a breach of contract claim against Defendants Holden and Gailey based on the confidentiality provision.

**IV. Conclusion**

All told, "whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "[A] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *See Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citation omitted). However, this is Plaintiff's Third Amended Complaint. (*See* Docs. 1, 21, 81, 120, 121). Plaintiff was already granted leave to amend to address deficiencies relating to its claims for tortious interference with a business expectancy and breach of contract. (*See* Doc. 119). The TAC fails to cure the deficiencies previously identified. Plaintiff has already been granted leave to amend; the Court will decline to do so again. *See Ecological Rights Found. v. Pac. Gas and Elec. Co.*, 713 F.3d 502, 520 (9th Cir. 2013) ("[T]he court's discretion to deny such leave is 'particularly broad' where the plaintiff has previously amended [the] complaint.") (citation omitted).

Accordingly,

**IT IS ORDERED** that Defendants' Motion to Dismiss (Doc. 128) is **granted in part and denied in part** in accordance with the terms of this order.

**IT IS FURTHER ORDERED** that Plaintiff's Count Two **is dismissed with prejudice and without leave to amend** insofar as it is based on a theory against Defendant Holden and Defendant Gailey for tortious interference with a business expectancy.

**IT IS FURTHER ORDERED** that Plaintiff's Count Five and Count Six **are dismissed with prejudice and without leave to amend** insofar as they are based on a theory against Defendants for breach of contract for violating the Non-Competition provision.

Dated this 16th day of October, 2026.

Honorable Steven P. Logan
United States District Judge